**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TOMORROW NICOLE BANKS,**

      **Plaintiff,**

                                   **Civil Action 2:18-cv-38**
                                   **Judge Algenon L. Marbley**
      **v.**                             **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Tomorrow Nicole Banks ("Plaintiff"), brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner")

denying her applications for a period of disability, disability insurance benefits, and

supplemental security income. This matter is before the undersigned for a Report and

Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Response

in Opposition (ECF No. 13), and the administrative record (ECF No. 8). For the reasons that

follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that

the Commissioner's decision be **AFFIRMED**.

## I.     BACKGROUND

Plaintiff protectively filed her application for a period of disability and disability

insurance benefits on January 15, 2014, and her application for supplemental security income on

February 10, 2014. In her applications, Plaintiff alleged a disability onset of September 12,

2013. Plaintiff's applications were denied initially on July 16, 2014, and upon reconsideration

on December 12, 2014. Plaintiff sought a hearing before an administrative law judge.

Administrative Law Judge Paul E. Yerian ("ALJ") held a hearing on October 17, 2016, at which

Plaintiff, represented by counsel, appeared and testified. Vocational expert Hermona C.

Robinson, Ph.D., (the "VE") also appeared and testified at the hearing. On January 11, 2017,

the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social

Security Act. On November 13, 2017, the Appeals Council denied Plaintiff's request for

review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then

timely commenced the instant action.

In her Statement of Errors (ECF No. 9), Plaintiff advances two contentions of error.

First, Plaintiff contends that the ALJ's residual functional capacity ("RFC") determination is not

supported by substantial evidence because the ALJ failed to identify Plaintiff's right shoulder

impairment as severe at step two of the sequential evaluation. In Plaintiff's view, the ALJ's

error at step two resulted in his failure to consider the functional limitations related to her right

shoulder impairment, leading to an RFC that does not capture all of her functional limitations.

Second, Plaintiff contends that the ALJ failed to properly evaluate her statements regarding the

intensity, persistence, and limiting effects of her right shoulder impairment. More specifically,

Plaintiff argues that in finding her statements to be not credible, the ALJ (1) relied on inaccurate

or misstated evidence and (2) failed to consider the factors set forth in 20 C.F.R. §

404.1529(c)(3).

## II.     THE ADMINISTRATIVE DECISION

On January 11, 2017, the ALJ issued his decision. (R. at 18-33.) At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

gainful activity since September 12, 2013, the alleged onset date.   The ALJ found that Plaintiff

had the severe impairments of obesity, degenerative changes of the cervical and lumbar spine,

trochanteric bursitis, fibromyalgia, an affective disorder, and an anxiety disorder.   He further

found that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P,

Appendix 1.   At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has
> the residual functional capacity to perform sedentary work as defined in 20 CFR
> 404.1567(a) except she can only occasionally climb ramps, stairs, ladders, ropes,
> and scaffolds.   She can occasionally kneel, crouch, and crawl.   She can frequently
> balance and stoop.   She can perform simple, repetitive tasks as well as some
> moderately complex tasks, where there are infrequent changes in work duties and
> processes and that do not involve fast assembly line pace, strict production quotas,

---

1.   Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.   *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?

2.   Does the claimant suffer from one or more severe impairments?

3.   Do the claimant's severe impairments, alone or in combination, meet or equal
the criteria of an impairment set forth in the Commissioner's Listing of
Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.   Considering the claimant's residual functional capacity, can the claimant
perform his or her past relevant work?

5.   Considering the claimant's age, education, past work experience, and residual
functional capacity, can the claimant perform other work available in the
national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

or more than occasional contact with coworkers.

(R. at 24.)   In reaching this determination, the ALJ followed a two-step process.   First, the ALJ found that "[a]fter careful consideration of the evidence, . . .[Plaintiff has] an underlying medically determinable impairment that could reasonable cause some symptomatology."   (R. at 25.)   Second, the ALJ found that "the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged." (*Id.*)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform her past work, she can perform jobs that exist in significant numbers in the national economy.   (R. at 32.)   He therefore concluded that Plaintiff was not disabled under the Social Security Act.   (R. at 33.)

### III.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court

must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746

(6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, Plaintiff maintains that the ALJ erred (1) in his determination of

Plaintiff's severe impairments at step two of the sequential evaluation process, thereby

depriving the RFC of support by substantial evidence, and (2) in his evaluation of Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her right shoulder

impairment. The undersigned finds these contentions of error to be unpersuasive.

### A. Step Two Findings

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the

existence of a severe, medically determinable impairment that meets the twelve-month durational

requirement.   *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012).   The Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process."   *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).   The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."   *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis.   *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 CFR 404.1520 and 416.920 . . . .").

Where, as here, the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."   *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003).   Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity."   20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803

6

(rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same). Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work. *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (internal quotation marks and citations omitted)).

In this case, as set forth above, the ALJ concluded that Plaintiff had several severe impairments, but found that her right shoulder impairment is not severe, reasoning as follows:

> The claimant was diagnosed with a distal supraspinatus tear and infraspinatus tendinopathy of the right shoulder, and during physical examinations, she alleged intense shoulder pain and often refused to participate in examinations of the limb due to reports of pain. However, the physical examinations of record consistently document intact strength, sensation, and reflexes, and EMG studies of the upper extremities were normal. She has not been referred for surgery and the orthopedic specialist who examined her did not recommend treatment except pain management. Multiple physicians have noted that her diagnostic findings do not support the degree of shoulder pain that she reports. She resides alone and told the consultative examined that she is able to perform activities such as cooking, cleaning, and shopping. I find that this impairment does not cause more than minimal symptoms or functional limitations and it therefore not severe.

(R. at 21.) The undersigned need not analyze whether the ALJ should have identified Plaintiff's shoulder impairment as severe because he properly considered her allegations relating to her shoulder impairment in crafting his RFC. *See Pompa*, 73 F. App'x at 803; *Maziarz*, 837 F.2d at

7

240.

For example, throughout his decision, the ALJ details Plaintiff's allegations of pain relating to her shoulder.   He details the results of Plaintiff's physical examinations, her conservative treatment history and treatment recommendations, her activities of daily living, and credited medical opinion evidence in making his finding that she did not require limitations beyond those included in the RFC he assessed.

For example, the ALJ reasonably pointed to the objective evidence in the record, which largely reflects mild to normal findings with accompanying conservative treatment recommendations.   (*See, e.g.*, R. at 269 ("No radiographic finding to account for patient's shoulder pain."); R. at 273 (results July 2013 exam reflecting 5/5 muscle strength in upper and lower extremities); R. at 298 (notes from October 2014 exam reflecting normal range of motion with crepitation); R. at 625 (notes from July 2015 ER visit reflecting "slight decreased ROM due to pains, stren[g]th 5/5, reflexes and pulses intact," and mild treatment recommendations); R. at 664-65 (notes from December 2014 exam reflecting full range of motion, intact strength, 5/5 grip, and treatment plan involving a sling and medication only).)

Next, substantial evidence supports the ALJ's conclusion that Plaintiff's reported activities of daily living reflect only minimal limitations resulting from her right shoulder impairment.   Indeed, apart from her daughter's assistance on weekends, it is apparent from the record that Plaintiff largely cares for herself, including driving, shopping, cleaning, cooking, and doing dishes.   (*See, e.g.*, R. at 58 (Plaintiff's hearing testimony that she cooks using the "main oven or the toaster oven" and cleans her bathroom weekly); R. at 361 (summarizing Plaintiff's reported activities of daily living, including limited chores and driving, doing dishes, grocery

shopping, and bathing and dressing "without much difficulty"); R. at 371 ("[Plaintiff] said she is able to clean, cook, and shop."); R. at 735 ("[Plaintiff] indicated she is very active with day-to-day activities but does no formal physical exercise.").)   Although Plaintiff's reported activities of daily living do not necessarily indicate that she is able to perform work activities, they do illustrate a greater functional ability than reported and thus constitute substantial evidence supporting the ALJ's determination.

Finally, the medical opinion evidence in the record constitutes substantial evidence supporting the ALJ's RFC findings.   Specifically, state agency reviewing physician Lynne Torello, M.D., to whom the ALJ assigned significant weight, opined on reconsideration that Plaintiff had no manipulative limitations.   (R. at 120; *See also* R. at 81 (opinion from state agency reviewing physician Leanne Bertani, M.D., that Plaintiff has no manipulative limitations).)   Indeed, the only medical source to opine that Plaintiff had any limitations due to her right shoulder impairment was consultative examiner Herbert A. Grodner, M.D., who opined that Plaintiff "*probably* would have some difficulty . . . reaching above shoulder level with the right shoulder."   (R. at 364 (emphasis added).)   Notably, Dr. Grodner did not offer a definitive opinion that Plaintiff was limited in her ability to reach, stating only that it is *probable* she would have some difficulty reaching overhead.   *Cf. Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896, at *10 (M.D. Tenn. Mar. 28, 2017) (citation omitted) (noting that an ALJ is not required to adopt nondefinitive functional limitations).   Moreover, the ALJ assigned only "limited weight" to Dr. Grodner's opinion, explaining that, "Dr. Grodner's assessment appears to uncritically accept as true the claimant's subjective reports of limitation, because his assessment is not well supported by his own examination."   (R. at 29-30.)   Significantly,

9

Plaintiff does not challenge the weight the ALJ assigned to Dr. Grodner's opinion. Rather,

Plaintiff contends that the ALJ improperly relied on opinions rendered prior to her 2015 MRI

and 2016 ultrasound. The undersigned finds her argument unpersuasive.

Contrary to Plaintiff's arguments, to the extent the ALJ relied on opinion evidence in

formulating the RFC, he did not err. Plaintiff has not cited any evidence demonstrating that the

results of the MRI and ultrasound undermine the ALJ's RFC determination. Rather, Plaintiff

appears to argue that simply because the MRI and ultrasound were completed after the opinions

were rendered, the RFC cannot be supported by substantial evidence absent updated medical

opinions. Plaintiff's argument lacks merit. *See, e.g.*, *McGrew v. Comm'r of Soc. Sec.*, 343 F.

App'x 26, 32 (6th Cir. 2009) (ALJ did not improperly rely upon state-agency physicians'

opinions where they were out of date where it was clear ALJ considered the medical

examinations that occurred after the opinions were rendered and takes into account any

changes); *Ruby v. Colvin*, No. 2:13–CV–01254, 2015 WL 1000672, at *4 (S.D. Ohio Mar. 5,

2015) ("[S]o long as an ALJ considers additional evidence occurring after a state agency

physician's opinion, he has not abused his discretion."). Here, the ALJ reviewed and

considered the 2015 MRI and 2016 ultrasound findings. (R. at 27 (discussing the findings of

the 2015 MRI); R. at 28 (discussing the findings of the 2016 ultrasound).) Moreover, there is

no indication that the most recent imaging studies revealed degradation of Plaintiff's right

shoulder not in existence at the time the opinions were rendered, nor is there any indication that

the results of the imaging studies would result in the physicians changing their opinions.

Rather, the record supports a finding that Plaintiff's impairment had not worsened and that

updated opinions were not necessary. Specifically, the record after Plaintiff's MRI and

ultrasound continues to reflect intact strength (*see, e.g.*, R. at 625 (exam findings reflecting 5/5 strength)), only slight reduction in range of motion (*id.* (exam findings reflecting "slight decreased ROM")), no change in Plaintiff's shoulder anatomy on x-ray images (*See* R. at 700), and Plaintiff's continued non-compliance with treatment recommendations (*See, e.g.*, R. at 652 (documenting Plaintiff's failure to schedule appointment with referral physician); R. at 495 ("[Plaintiff] states that she has been out of all of her meds for a couple months."); R. at (noting "[s]ome compliance concerns—not taking Cymbalta consistently".)   In addition, as the ALJ discussed, the recommendations from the physicians who reviewed the recent imaging studies were conservative, also supporting the ALJ's RFC finding as discussed above.   (*See* R. at ("I do not feel any type of surgical intervention would help her."); R. at 737 (noting that Plaintiff is not a good candidate for surgery, but that "[s]he might benefit from seeing a specific pain management specialist").)

In sum, the undersigned concludes the ALJ properly considered Plaintiff's shoulder impairment and her allegations of pain relating to her impairment in assessing his RFC. Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

B.      **The ALJ's Credibility Determination**

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p.   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).   SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements.   In contrast, SSR 16-3p requires the ALJ to

evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall

*credibility*, or character for truthfulness.   *See id.* at *11 ("In evaluating an individual's

symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the

manner typically used during an adversarial court litigation. The focus of the evaluation of an

individual's symptoms should not be to determine whether he or she is a truthful person.").

Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its

purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to

substantially *change* them."   *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at

*10 (N.D. Ohio June 22, 2017).   The rules were clarified primarily to account for the difference

between a credibility determination, which necessarily impacts the entirety of a claimant's

subjective testimony, and a consistency determination, which applies only to specific statements

regarding symptoms.   *See* SSR 16-3p at *2.   It follows, therefore, that the procedures for

reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the

procedures under SSR 96-7p.   Accordingly, the undersigned concludes that existing case law

controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's

clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's

credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the
> disability claim, a two-part analysis is used in evaluating complaints of disabling
> pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001);
> *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask
> whether the there is an underlying medically determinable physical impairment that
> could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §
> 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must
> evaluate the intensity, persistence, and limiting effects of the symptoms on the

individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

In this case, the undersigned concludes that the ALJ properly evaluated Plaintiff's statements under SSR 16-3p. As discussed by the ALJ, examination findings, conservative

13

treatments, non-compliance with recommended treatments, and Plaintiff's activities of daily

living demonstrate that Plaintiff's statements regarding her symptoms and limitations are

inconsistent with the record evidence.   For example, the ALJ reasonably discounted Plaintiff's

allegations based on inconsistencies between her alleged symptoms and the objective testing

results.   (*See, e.g.*, R. at 269 ("No radiographic finding to account for patient's shoulder pain.");

R. at 273 (notes from July 2013 exam reflecting 5/5 muscle strength in upper and lower

extremities); R. at 298 (notes from October 2014 exam reflecting normal range of motion with

crepitation); R. at 625 (notes from July 2015 ER visit reflecting "slight decreased ROM due to

pains, stren[g]th 5/5, reflexes and pulses intact," and mild treatment recommendations); R. at

664-65 (notes from December 2014 exam reflecting full range of motion, intact strength, 5/5

grip, and treatment plan involving a sling and medication only); R. at 625 (exam findings

reflecting 5/5 strength and "slight decreased ROM"); R. at 700 (x-ray images showing largely

normal gross shoulder anatomy).).   As discussed above, the ALJ also reasonably considered that

Plaintiff was primarily treated with conservative treatment modalities and displayed a history of

non-compliance with conservative treatment recommendations.   *See Richendollar v. Colvin*, No.

1:13-cv-495, 2014 WL 4910477, at *5 (S.D. Ohio Aug. 7, 2014) ("A claimant's failure to follow

treatment can indicate that he is not as disabled as alleged.") (citing *Mullen v. Bowen*, 800 F.2d

535, 547 (6th Cir. 1986)); *Tate v. Comm'r of Soc. Sec'y*, 467 F. App'x 431, 433 (6th Cir. 2012)

(holding that substantial evidence supported ALJ's weighing of treating physician's opinion

where there were substantial gaps in treatment); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387,

389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations

where, among other things, the claimant was receiving conservative treatment).   In addition, the

ALJ reasonably concluded that Plaintiff's reported activities of daily living, including shopping, cooking, and cleaning, are incongruous with her reports of extreme symptoms. (*See, e.g.*, R. at 361 (summarizing Plaintiff's reported activities of daily living, including limited chores and driving, doing dishes, grocery shopping, and bathing and dressing "without much difficulty"); R. at 371 ("[Plaintiff] said she is able to clean, cook, and shop."); R. at 735 ("[Plaintiff] indicated she is very active with day-to-day activities by does no formal physical exercise.").).

Plaintiff's arguments that the ALJ relied on inaccurate or misstated evidence and failed to consider the § 404.1529(c)(3) factors are unpersuasive. Plaintiff first objects to the ALJ's characterization of her activities of daily living, arguing that, "[w]ith regard to the ALJ's statement that Plaintiff resides alone and told the consultative examiner that she is able to perform activities such as cooking, cleaning, and shopping, the ALJ fails to reference the fact that Plaintiff's daughter comes home on the weekends to assist her." (Pl.'s Statement of Errors 16, ECF No. 9.) The record, however, supports the ALJ's conclusion. For example, Plaintiff testified at the administrative hearing that her daughter "sometimes . . . comes home for the weekend" and "might prepare [food] that may get me through most of the week, but not the entire week," and "I'll have to clean my toilet, my bathroom, mainly, because it doesn't last from one weekend to the next." (R. at 58.) Moreover, the fact that Plaintiff's daughter assists her on weekends does not undermine the ALJ's finding that Plaintiff drives, cooks, cleans, and shops during the rest of the week. Further, the ALJ did not rely on Plaintiff's activities of daily living alone in making his credibility finding; rather, as set forth above, the ALJ also relied on Plaintiff's examination results and treatment history, her history of non-compliance, and credited medical opinions.

Finally, Plaintiff contends that the ALJ failed to consider the 20 C.F.R. 404.1529(c)(3) factors in evaluating Plaintiff's credibility/consistency. As set forth above, the ALJ is not required to expressly discuss each factor in his decision. *See Ewing*, 2011 WL 3843692, at *9. In this case, the ALJ stated that he considered the relevant factors. Indeed, the decision reflects that the ALJ expressly considered: Plaintiff's activities of daily living (R. at 22 (finding only mild restrictions in activities of daily living)); the location, duration, frequency, and intensity of Plaintiff's pain (R. at 24 (noting Plaintiff alleged "chronic, widespread pain")); and Plaintiff's medications (*see, e.g.* R. at 26 (discussing Plaintiff's use of Cymbalta, Lyrica, and Voltaren and their effectiveness). The undersigned finds, therefore, that Plaintiff's contention that the ALJ failed to consider the relevant factors lacks merit.

In summary, the undersigned finds that the ALJ properly evaluated the consistency of Plaintiff's statements regarding her symptoms and limitations, finding them to be inconsistent with the record overall. Although substantial evidence may also support an alternative finding, the undersigned agrees with the Commissioner that the ALJ's findings were within the ALJ's permissible "zone of choice." *See Blakley*, 581 F.3d at 406 (The court presupposes that there is a "zone of choice" within which the ALJ may go either way without judicial inference). Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## V. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

\_\_/s/ *Chelsey M. Vascura*_____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE